262 N.J. Super. 367 (1993)
621 A.2d 50
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD RUSSO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 1993.
Decided February 18, 1993.
*369 Before Judges MICHELS, BILDER and WALLACE.
Butler and Johnathan, attorneys for defendant-appellant (James N. Butler, Jr., of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for plaintiff-respondent (Mark Paul Cronin, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal from the denial of an application to withdraw a plea of guilty. Although set forth as a number of different contentions, defendant's essential complaint is that he was sentenced by a different judge than the one before whom he pled. This was the essence of his argument when he sought to withdraw his plea at the time of sentencing.

I.
On February 11, 1991, defendant Richard Russo entered a retraxit plea of guilty to second degree conspiracy to commit theft (count 1), and theft of property valued in excess of $75,000 by failure to make required disposition of said property (count 2). As part of the plea, the State agreed that "if Mr. *370 Russo produces to the Court within 30 days from the date of this sentencing full restitution as alleged in the indictment in the amount of one million dollars plus interest, * * *, if those entire moneys are deposited with the Court, then the State will recommend that Mr. Russo be treated as a third degree offender for purposes of sentencing." On March 28, 1991, he appeared before a different judge. He had not deposited the required moneys in court. He was sentenced to concurrent custodial terms of seven years on each count and ordered to pay one million dollars in restitution.

II.
A careful examination of the plea transcript shows the following:
1. The trial judge made the particulars of the offense exquisitely clear on the record.
It's a two count indictment. The first count charges you with a second degree conspiracy, charging that specifically on or about January 1986 and on or about June 30, 1986 in Wyckoff, Upper Saddle River, Woodcliff Lake, Paramus, all in Bergen County as well as in the Town of Clarkstown in New York and elsewhere * * * with the purpose of promoting and facilitating the commission of the substantive crime in this case, theft by failure to make required disposition of property, that you did engage in or help in planning or soliciting the commission of that crime by pursuing conduct which would constitute that crime, the crime being to purposely obtain or retain property valued in excess of 75 thousand dollars upon agreement or subject to a known legal obligation to make specified payment or other disposition, and to deal with the property obtained as if it were your own and to fail to make the required payment or disposition of that property.
* * * * * * * *
[One of the specific acts alleged against you] is that it was further a part of the conspiracy that the borrowers in this case * * * Maryanne Sieck and Ronald Parente would place a million dollars good faith money in a trust account of PCG Realty for subsequent disbursement to another entity known as Marine Trading and Promotions Corp., and that in furtherance of that conspiracy you promised that that money would be deposited into the escrow account by a New York attorney for the benefit of the Marine Trading a Promotions Corp.
* * * * * * * *

*371 Count two of course is also a second degree crime, and that charges that you did fail to place that money in the escrow account of E. George Nyberg, an attorney.
2. The trial judge made the penal consequences abundantly clear. We focus on the custodial consequences.
As I said, these are each second degree offenses and they expose you up to 10 years in the state prison system, * * * As I understand it however, if you went to trial on this and you were found guilty of both of these offenses, you would only be punishable under one because the conspiracy would merge into the substantive offense.
3. The trial judge took special pains to make it clear to defendant that it was unlikely he would receive a noncustodial sentence.
You understand that as a second degree offense, either one or both of these carries with it a presumption of imprisonment in the state prison system. That presumption is rarely overcome. Only upon a showing of a serious injustice may the Court consider not incarcerating the defendant who was found guilty of a second degree offense or pleads guilty to a second degree offense. That standard is a very high standard, and our Supreme Court has handed down a number of decisions in cases in which the defendant was very idiosyncratic personally and the conduct was closely related to the idiosyncrasy. In one case there was a retarded young woman. What I'm actually trying to explain to you, Mr. Russo, is that it's rare that imprisonment is not imposed by a Court. Do you understand that by pleading guilty to the indictment in this case, that it is likely that you will be sentenced to prison? [To which the defendant responded "Yes".]
4. The trial judge made it clear that the probability of a custodial sentence would continue even if the million dollars was paid and the matter was treated as a third degree offense.
Other than what has been set forth here on the record that the State is willing to recommend that I treat you as a third degree offender, which only means that the maximum term of imprisonment would be five years instead of the 10 years, and that is a conditional recommendation, if you will, conditioned upon your paying a million dollars plus interest at the legal rate under our rules of Court for a period that was mentioned by [the deputy attorney general], January 1, 1989 through to the date of actual sentence, which could be a substantial amount of interest, that only on that condition would they recommend that you be treated as a third degree offender. The presumption of course would still exist in the case, do you understand that? [To which the defendant responded "Yes".]
5. The trial judge advised defendant he could receive a minimum term.

*372 Do you understand that not only could I sentence you to 10 years in the state prison system but I could also impose a period of parole ineligibility up to one half of the term of the maximum sentence, 5 years in this case, before you could be eligible for parole, do you understand that? [To which the defendant responded "Yes".]
6. Defendant acknowledged that he had sufficient time to discuss the charges with his attorney before his plea, said he did not need any extra time to speak with his attorney, said he was satisfied with his attorney's legal representation of him in this case, and that his attorney had answered all of defendant's questions to his satisfaction. He further acknowledged that the plea and his answers to the questions on the plea form were voluntary, that he understood each of the questions and that the answers were his.
7. Defendant is a highly educated individual. He has a Masters Degree in Finance.[1]
8. The trial judge recognized that defendant might still harbor hopes of nonincarceration and confronted the issue.
I understand that you have hopes that you will not be incarcerated as a result of entering a plea of guilty to the charge. Would that be fair to say? [To which the defendant responded "Yes".] Is there anything that you feel anyone has said to you that led you to expect that you would not be incarcerated in connection with the sentence in this case? [To which the defendant responded "No".]

III.
In State v. Smullen, 118 N.J. 408, 414-418, 571 A.2d 1305 (1990), the Supreme Court reviewed and generally reaffirmed established principles regarding the withdrawal of a guilty plea. "A guilty plea voluntarily entered may not be withdrawn except pursuant to leave granted in the exercise of the trial judge's discretion." State v. Huntley, 129 N.J. Super. 13, 16, 322 A.2d 177 (App.Div. 1974), certif. den., 66 N.J. 312, 331 A.2d 12 (1974). "However, where before sentence the defendant asserts his *373 innocence and seeks to withdraw his plea and proceed to trial, the courts in our State, in practice, generally exercise their discretion liberally to enable withdrawal of the plea and a trial on merits * * *." State v. Deutsch, 34 N.J. 190, 198, 168 A.2d 12 (1961). This liberality, however, is dependant upon a showing that the relief is required by fairness.
[I]t is clear that the burden rests on defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits, so the trial judge is able to determine whether fundamental fairness requires a granting of the motion. Any other approach would automatically require a trial judge to grant such motions, and strip him of any discretion in the matter. Liberality in exercising discretion does not mean an abdication of all discretion. [State v. Huntley, supra, 129 N.J. Super. at 17, 322 A.2d 177.]
"All plea-bargain jurisprudence recognizes the important interest of finality to pleas." State v. Smullen, supra, 118 N.J. at 416, 571 A.2d 1305. "[T]he measure of what constitutes fair and just reason for withdrawal must be reposed in the sound confidence of the court." Id. at 417, 571 A.2d 1305.

IV.
In his brief on appeal defendant makes the following contentions:
POINT ONE
JUDGE GAETA COMMITTED REVERSIBLE ERROR IN FAILING TO ALLOW THE DEFENDANT-APPELLANT TO RETRACT HIS PLEA OF GUILTY.
POINT TWO
THE TRIAL COURT ERRED IN ITS DENIAL OF THE DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY IN THAT THE DEFENDANT-APPELLANT DID NOT GIVE A FACTUAL BASIS.
POINT THREE
THE TRIAL COURT SHOULD HAVE GRANTED THE DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY IN THAT MISINFORMATION WAS IMPARTED TO THE DEFENDANT THAT INDUCED HIS PLEA.
POINT FOUR
JUDGE GAETA COMMITTED REVERSIBLE ERROR IN DENYING THE DEFENDANT-APPELLANT'S APPLICATION FOR AN ADJOURNMENT.
POINT FIVE

*374 APPELLATE COURT SHOULD REVERSE AND REMAND THIS MATTER TO THE SUPERIOR COURT FOR A TRIAL ON THE MERITS AS TO THE DEFENDANT-APPELLANT RECEIVING INEFFECTIVE ASSISTANCE OF COUNSEL.
Defendant's contentions are clearly without merit. R. 2:11-3(e)(2). Defendant does not proclaim his innocence. Rather, he continues to admit his guilt but seeks to shop for a judge who he hopes will impose a noncustodial sentence. His arguments that he was led to expect such a sentence is belied by the record. We reject the contention that a defendant may withdraw a plea when the judge who accepts the plea is not the sentencing judge.
His claim that the State's agreement not to take a position as to the application for any Intensive Supervision Program was illusory because as a New York resident he is ineligible, is disingenuous. ISP merely requires that participants in the program remain within New Jersey, not that their preincarceration residence have been in this State.[2]
Similarly disingenuous is his claim that he should have been granted more time to raise the necessary restitution funds (one million dollars plus interest). Not only had the time agreed to in the plea agreement passed, but there was no showing that more time would change the result.
And similarly disingenuous is his effort to base his efforts on a claim of ineffective counsel. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). The plea transcript clearly shows that the probability of incarceration was fully made known to defendant by the trial judge. Even had defense counsel's representation been faulty, a conclusion we cannot find to exist, the claimed inadequacies could not have prejudiced defendant.

*375 V.
Defendant's contention that he did not give an adequate factual basis for his plea is also belied by the record. He informed the trial judge:
Money was received from Maryanne Sieck and it did not go into the attorneys trust account.
* * * * * * * *
One million into the attorneys trust account pursuant to the agreement. Money was divided between myself and my brother. I spent my share of money to repay personal indebtedness, and it was over 75 thousand dollars.
As he contends, when asked if it was his purpose to promote and facilitate the crime he was pleading to, defendant did answer "No"; however, immediately thereafter he acknowledged that it was his conscious object to violate the law when he took the money, that he understood he had a legal obligation to make the specified deposit in the attorney trust account, and that he had not done that.
We are satisfied an adequate factual basis was established for the plea. See State v. Smullen, supra, 118 N.J. at 417-418, 571 A.2d 1305.
Affirmed.
NOTES
[1] This was defendant's contention. According to the State, he had a Bachelors Degree in Business.
[2] We note in passing that a failure to accord citizens of other states the same rights as are afforded citizens of this State would violate the equal protection clause of the U.S. Constitution.