Filed 2/3/21 P. v. Delgado CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FROYLAN DELGADO,<br><br>    Defendant and Appellant. | B299482<br><br>(Los Angeles County<br> Super. Ct. No. BA470834) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge. Affirmed.

Julie Caleca, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., Deputy Attorney General, John Yang, Deputy Attorney General, for Plaintiff and Respondent.

_____

Froylan Delgado appeals from a judgment entered after the jury convicted him of shooting at an occupied vehicle, assault with an assault weapon, and possession of a firearm. The jury also found true gang and firearm enhancement allegations. On appeal, Delgado contends his due process rights were violated because the trial court instructed the jury with CALCRIM No. 315 that an eyewitness's level of certainty can be considered when evaluating the reliability of the witness's identification. Delgado also argues the trial court abused its discretion by declining to exercise its discretion to strike the firearm enhancement under Penal Code[1] section 12022.53, subdivision (c), and defense counsel rendered ineffective assistance of counsel in failing to present any argument on Delgado's behalf at the sentencing hearing. Finally, Delgado contends the trial court's imposition of court assessments and restitution fines violated his due process rights because the trial court did not conduct a hearing on his ability to pay pursuant to this court's opinion in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial*
   1. *The shooting*
At approximately 1:20 a.m. on August 25, 2018 six Los Angeles Police Department (LAPD) officers responded to a 911 call of shots fired in the area of Drew and Weldon Streets in northeast Los Angeles, near 3405 Drew Street. The location was

---

[1] All undesignated statutory references are to the Penal Code.

at the heart of the territory claimed by the "Avenues" street gang and the stronghold of the Drew Street clique within the Avenues gang.

Upon arriving at the scene, LAPD police officers detained several known Avenues gang members. Gabriela Alonso, who was an associate of the gang, was detained with her boyfriend Juan Briseno, a known Avenues gang member, as the two walked away from the area near 3411 Drew Street. Police officers also detained Avenues gang member Gonzalo Urieta, who was running down Drew Street away from the scene, and Avenues gang member Adrian DeJesus, who was holding his waistband while walking away from 3411 Drew Street.

During a canvass of the area, Los Angeles Police Officer Tom Quino found three spent .223 caliber shell casings in the walkway and street in front of 3405 Drew Street. Los Angeles Police Officer Michael Marino discovered a loaded semiautomatic firearm wrapped in a towel hidden behind the fence at 3411 Drew Street. Daniel Rubin, a criminalist with the LAPD firearm analysis unit, testified the firearm had the characteristics of an assault weapon as defined under California law because it was capable of accepting a detachable magazine inserted into the firearm in a location other than the pistol grip, and its barrel was covered. Through laboratory testing, Rubin confirmed the recovered shell casings had been fired from the firearm. No fingerprints were recovered from the firearm.

On the morning of the shooting, Officer Marino and Los Angeles Police Sergeant Nick Giordano were able to obtain and view surveillance video from 3407 Drew Street. The video showed that on August 25, 2018 at 1:16 a.m. a man in a white sleeveless shirt emerged onto the sidewalk in front of 3405 Drew Street as a car was driving down the street. A flash emanated

3

from the man's position as the car passed him. The man then moved into the street behind the car, and another flash can be seen where the man was standing. The 3407 Drew Street video was played for the jury.

The 3407 Drew Street video also showed a man and woman (later identified as Alonso and Briseno) stashing a towel-wrapped object inside the fence at the location where Officer Marino had recovered the assault weapon. Based on the video, Alfonso and Briseno were arrested. Briseno tested positive for gunshot residue; Alonso's gunshot residue test was negative.[2] The police were not able to identify the vehicle involved in the shooting, and they could not determine how many occupants were inside.

2. *The 3405 Drew Street surveillance video and identification of Delgado*

As part of the police investigation into the shooting, Sergeant Giordano contacted Justin Jacobo, who was believed to have access to the video surveillance system for the building at 3405 Drew Street. Three days after the shooting, Sergeant Giordano received an email from Jacobo containing a hyperlink to a Web site containing the 3405 Drew Street video footage. Sergeant Giordano watched the video that day and saw that it captured the shooting, but he did not recognize the shooter. He forwarded the video link to Los Angeles Police Officers Massey, Marino, and Daniel Kaminski, and to Detective Justin Fuller.

Officer Massey viewed the video on August 28 and recognized Delgado as the shooter. Officer Massey, who was then

---

[2] LAPD criminalist Stacy Vanderschaaf testified it is not necessary for an individual to have discharged a firearm to test positive for gunshot residue if the individual handled the weapon.

assigned to the LAPD's gang enforcement detail for the northeast division, had interacted with Delgado on five to 10 earlier occasions and had filled out multiple field information cards on Delgado. Massey testified the video was from "a very good quality camera," and it was "easy to identify people if you knew who they were." Massey took a photograph of a frame of the video that depicted Delgado walking with the firearm to his left side. The photograph was admitted into evidence, and Massey identified Delgado in the courtroom as the man in the photograph. However, the video was not available at trial. Massey testified the quality of the video was superior to that of the photograph.

Officer Massey testified the video showed Delgado in a white sleeveless shirt standing in the front courtyard of 3405 Drew Street with several other people. After looking up Drew Street, Delgado walked into apartment 2 in the building[3] and emerged carrying an object that appeared to be a firearm. Delgado walked out to the sidewalk as a vehicle traveling south on Drew Street came to a stop near Delgado's position. Delgado pointed the firearm at the vehicle and fired one shot as the vehicle resumed traveling southbound. Delgado walked into the street and fired another shot at the vehicle after it passed. Delgado then walked back into apartment 2. Officer Massey also testified the video showed Alonso emerging from the same area around apartment 2 one minute later carrying what looked like a sheet wrapped around an object. Alonso walked onto the sidewalk and headed north in the direction of 3407 Drew Street.

---

[3] Massey inferred Delgado entered apartment 2 based on the location where Delgado entered the building, although the apartment doorways were not visible within the camera frame.

5

Officer Kaminksi independently identified Delgado as the shooter after viewing the 3405 Drew Street video. He had encountered Delgado 30 to 50 times over an eight-year period while assigned to the northeast division gang detail; he knew Delgado well; and he had seen Delgado "almost daily" in the courtyard in front of 3405 Drew Street during patrols. Officer Kaminski was "100 percent" certain Delgado was the man he saw in the video. Officer Kaminski testified the photograph admitted at trial was of poorer quality than the video, and he could not identify Delgado with 100 percent certainty from the photograph alone. But he testified Delgado's face was clearly visible in the video.

Los Angeles Police Officer Jon Hunt also viewed the 3405 Drew Street video and identified Delgado as the shooter. Officer Hunt testified he was familiar with Delgado, having "seen him well over a dozen times in the area of Drew Street," and he had one documented contact with Delgado. Officer Hunt was "very confident" Delgado was the person he saw in the video.

After receiving the link to the surveillance video, Sergeant Giordano called Jacobo to obtain an off-line copy. Jacobo agreed to place the video on a flash drive and drop it off at the police station. But Jacobo never delivered a copy, and the video subsequently became unavailable on the website. On September 21, 2018 Sergeant Giordano and other police officers accessed the video surveillance equipment at 3405 Drew Street, but the footage from August 25 was no longer available because the system had overwritten the recording data after a number of days. Detective Fuller also attempted to retrieve the video from the website operator, but he was informed the file had been deleted by the user and "purged" from the system.

### 3. *The search of 3405 Drew Street, apartment 2*

On September 21, 2018 LAPD officers executed a search warrant for apartment 2 at 3405 Drew Street. When the officers arrived, Delgado was sitting outside of the building. During their search, officers recovered a loaded handgun inside a closet, a box of narcotics, men's clothing, and a medical bracelet and recent hospital paperwork bearing Delgado's name.

### 4. *The gang expert testimony*

Officer Hunt, who had been assigned to the gang enforcement detail for the northeast division for 18 months, testified as the prosecution expert on the Avenues gang. Officer Hunt stated that in order to maintain their territory, street gangs often use violence to establish dominance over rival gangs and to intimidate citizens from cooperating with law enforcement. A rival gang's intrusion into gang territory would constitute an insult and challenge to the gang's authority that could be met by violence, including shootings and potentially murder.

Officer Hunt testified the Avenues gang has approximately 630 members, and Drew Street is one of the primary strongholds of the gang, where members regularly congregate and socialize. The Drew Street clique is a prominent sub-group within the Avenues gang. The primary rivals of the Avenues gang are the Highland Park gang and the Cypress Park gang. The primary activities of the Avenues gang include vandalism, battery, petty thefts, drug possession and sales, weapon violations, assaults, murder, and attempted murder.

Officer Hunt opined Delgado was a member of the Avenues gang and the Drew Street clique, and he used the moniker "Chuco." Delgado had admitted he was a member of the gang, had numerous Avenues gang-specific tattoos, associated with

7

other Avenues gang members, and frequented Avenues gang locations, including Drew Street. Four other police officers testified Delgado admitted to being an Avenues gang member.

In response to a hypothetical based on the facts of this case, Officer Hunt opined the shooting was committed for the benefit of and in association with the Avenues gang. Officer Hunt explained that "walking into the middle of the street where there are multiple apartments" to carry out a shooting with a semiautomatic assault weapon "sends a very clear message to the residents there that these gang members have access to high powered weapons, . . . they're willing to use it, and they're willing to shoot at rivals and perceived rivals, which allows them to continue their criminal exploits." Officer Hunt also testified the hypothetical conduct was done in association with the gang because other gang members were present and could act as lookouts, intimidate witnesses, and hide the weapon. Officer Hunt opined possession of a high-powered firearm would benefit the gang because it would make it less likely rivals would "challenge that gang if [rivals] know that they're equipped with an assault type weapon that is capable with being fired from a vast distance" and intimidate civilians by showing the gang has armor-piercing weapons.

Delgado did not testify or present evidence in his defense.

B.    *The Verdict and Sentence*
The jury found Delgado guilty of shooting at an occupied motor vehicle (§ 246; count 2) and found true the allegations Delgado personally used and intentionally discharged a firearm in the commission of the shooting (§ 12022.53, subds. (b) & (c)) and the shooting was committed for the benefit of, at the direction of, or in association with a criminal street gang

8

(§ 186.22, subd. (b)(4)).  The jury also found Delgado guilty of possession of a semiautomatic firearm by a felon (§ 29800, subd. (a)(1); count 3)[4] and assault with an assault weapon (§ 245, subd. (a)(3); count 5).  The jury found the firearm enhancement allegation true on count 5 (§ 12022.5, subd. (b)) and the gang enhancement allegations under section 186.22, subdivision (b)(1)(A), true as to counts 3 and 5.[5]

The trial court sentenced Delgado on June 13, 2019.  On count 2, the court imposed an indeterminate term of 35 years to life comprised of 15 years to life for shooting at an occupied vehicle based on the gang enhancement (§ 186.22, subd. (b)(4)) plus 20 years for the firearm enhancement under section 12022.53, subdivision (c).  The court imposed and stayed a 10-year term for the firearm enhancement under section 12022.53, subdivision (b).  On count 3 for possession of a firearm by a felon, the court imposed an additional seven years (the middle term of three years plus four years for the gang enhancement) to run concurrently with the sentence on count 2. On count 5 for assault with an assault weapon, the court imposed and stayed (under § 654) an additional 19 years (the middle term of eight years plus five years for the gang enhancement and six years for the firearm enhancement).[6]

---

[4]    The parties stipulated that in March 2000 Delgado suffered a prior felony conviction.

[5]    The jury acquitted Delgado on count 4 for possession of semiautomatic firearm by a felon (§ 29800, subd. (a)(1)) with respect to the firearm recovered from 3405 Drew Street.

[6]    The abstract of judgment was corrected on May 14, 2020 in response to Delgado's request that the reference in the prior abstract on count 5 to a violation of section 245, subdivision (c),

9

The trial court imposed on each count a $40 court operations assessment (§ 1465.8, subd. (a)(1)) and a $30 criminal conviction assessment (Gov. Code, § 70373), for a total of $210. The court also imposed a $500 restitution fine (Pen. Code, § 1202.4) and imposed and stayed a parole revocation restitution fine in the same amount (*id.*, § 1202.45).  Delgado timely appealed.

## DISCUSSION

A.  *The Trial Court Did Not Err in Instructing the Jury with CALCRIM No. 315*

Delgado contends the trial court violated his due process rights in instructing the jury with CALCRIM No. 315, which advised the jury that in evaluating an eyewitness identification, the jurors should consider "[h]ow certain was the witness when he or she made an identification."[7]  Delgado argues this

_____

for assault with a deadly weapon on a peace officer was a clerical mistake.

[7]     The trial court instructed the jury with CALCRIM No. 315, as modified:  "You have heard eyewitness testimony identifying the defendant.  As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony.  In evaluating identification testimony, consider the following questions:  Did the witness know or have contact with the defendant before the event?  How well could the witness see the perpetrator?  What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance and duration of observation, and by looking at a video of a surveillance camera?  How closely was the witness paying attention?  Was the witness under stress when he

10

instruction on witness certainty was erroneous "given the weight of scientific research rejecting certainty as evidence of accuracy."[8]

or she made the observation? Did the witness give a description and how does that description compare to the defendant? How much time passed between the event and the time when the witness identified the defendant? Was the witness asked to pick the perpetrator out of a group? Did the witness ever change his or her mind about the identification? How certain was the witness when he or she made an identification? Are the witness and the defendant of different races? Was the witness able to identify other participants in the crime? Was the witness able to identify the defendant in a photographic or physical lineup? Were there any other circumstances affecting the witness's ability to make an accurate identification?"

[8] The People contend Delgado forfeited his claim of instructional error because defense counsel did not object to the trial court's instruction with CALCRIM No. 315. But we review any claim of instructional error that affects a defendant's substantial rights whether or not trial counsel objected. (§ 1259 ["The appellate court may also review any instruction given . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."]; *People v. Burton* (2018) 29 Cal.App.5th 917, 923 ["'Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights.'"]; *People v. Bedolla* (2018) 28 Cal.App.5th 535, 544 [same].) Of course, "[w]e can only determine if [a] defendant['s] substantial rights were affected by deciding whether the instruction was given in error and, if so, whether the error was prejudicial." (*People v. Medina* (2019) 33 Cal.App.5th 146, 154, fn. 7.) That is, if Delgado's claim has merit, it has not been forfeited. We therefore necessarily review the merits of Delgado's contention the instruction violated Delgado's constitutional rights. Because we find no forfeiture, we do not reach Delgado's argument his attorney's failure to object constituted ineffective assistance of counsel.

A claim that a jury instruction violates due process "involves the determination of applicable legal principles" that we review de novo. (*People v. Alvarez* (1996) 14 Cal.4th 155, 218; accord, *People v. Posey* (2004) 32 Cal.4th 193, 218 ["The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law."].)

The California Supreme Court has expressly approved the use of CALJIC No. 2.92, the predecessor to CALCRIM No. 315, against similar due process challenges based on the inclusion of witness certainty as a factor for consideration. (See *People v. Sánchez* (2016) 63 Cal.4th 411, 462 (*Sánchez*) [no error or prejudice in instructing jury with CALJIC No. 2.92 on witness certainty as a factor relevant to the accuracy of witness's identification]; *People v. Johnson* (1992) 3 Cal.4th 1183, 1232 ["The trial court did not err . . . in instructing the jury on the 'certainty' factor."]; see also *People v. Rodriguez* (2019) 40 Cal.App.5th 194, 199-200 [*Sánchez* "reiterated three decades of California Supreme Court precedent that a trial court may instruct the jury to consider eyewitness certainty."].)

Delgado acknowledges the Supreme Court in *Sánchez, supra,* 63 Cal.4th at page 461, rejected the argument Delgado makes here that the trial court had a sua sponte duty to remove the witness certainty factor from its eyewitness identification instruction. But he argues the *Sánchez* court indicated a willingness to reexamine the issue, observing "[a]ny reexamination of our previous holdings in light of developments in other jurisdictions should await a case involving only certain identifications." (*Id.* at p. 462.) Delgado also points to Justice Liu's concurrence, in which he stated, "In light of developments in scientific research and recent case law, there is a substantial question whether it is proper for trial courts to instruct that

12

witness certainty is a factor bearing on the accuracy of an identification that juries should consider. [¶] The sooner we reexamine this issue, the better."[9] (*Id*. at p. 498 [conc. opn. of Liu, J.].)

As Delgado's argument implicitly recognizes, *Sánchez* directly controls the present case. And the issue of instruction on witness certainty in a case involving only certain identifications (at issue here) is currently pending before the Supreme Court following its grant of review of *People v. Lemcke*, review granted October 10, 2018, S250108. Unless and until the Supreme Court reaches a contrary conclusion in *Lemcke*, we are bound by its earlier holdings. (*K.R. v. Superior Court* (2017) 3 Cal.5th 295, 308 ["'[I]t is established that a holding of the Supreme Court binds all of the lower courts in the state, including an intermediate appellate court.'"]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court."].) The trial court therefore did not err in instructing the jury with CALCRIM No. 315 that it

---

[9] The *Sánchez* court noted that courts in some jurisdictions have disapproved instructions on witness certainty in light of the scientific studies rejecting certainty as an indicator of accuracy, but the court observed, "[I]n a case like this involving uncertain as well as certain identifications, it is not clear that even those cases [rejecting the certainty instruction] would prohibit telling the jury it may consider this factor." (*Sánchez, supra*, 63 Cal.4th at p. 462.) In the present case, the three witnesses who identified Delgado from the 3405 Drew Street video expressed certainty as to their identifications.

may consider an eyewitness's certainty as to an identification. (*Sánchez, supra*, 63 Cal.4th at p. 462.)

B.    *The Trial Court Did Not Abuse Its Discretion in Declining To Strike the 20-year Firearm Enhancement*

   1.    *Relevant proceedings*

Prior to the sentencing hearing, the People submitted a sentencing memorandum requesting the trial court sentence Delgado to 15 years to life on count 2 for shooting at an unoccupied vehicle based on the gang enhancement (§ 186.22, subd. (b)(4)), plus a consecutive term of 20 years for the section 12022.53, subdivision (c), firearm enhancement.  The People noted in the memorandum that section 12022.53, subdivision (h), gave the trial court authority to strike the firearm enhancement.  The People proposed the court sentence Delgado concurrently on count 3 for possession of a firearm by a felon and stay the sentence on count 5 for assault with an assault weapon pursuant to section 654.

At the sentencing hearing on June 13, 2019, the trial court indicated it had reviewed the probation report and the People's sentencing memorandum.  The court described the People's memorandum as accurate and "right on the money as far as what the sentence would be in this case."  But the court noted it had the discretion to strike one or both of the firearm enhancements (the 10- and 20-year enhancements).  The court explained, "I guess the only thing I want to hear about before I sentence the defendant is, Mr. Calabria,[10] what is your position on the gun[] allegations?  And let me just tell you this: where I definitely decided that, you know, a gun allegation has to be applied in this

_____

10    Donald J. Calabria was Delgado's counsel.

14

case, the only thing that I gave some small thought to is whether I should exercise my discretion and use the 10-year one instead of the 20-year one.  But you've got really a mountain to climb here because I also looked at his record.  Anyway, what is it you would like to tell me, Mr. Calabria?"

Defense counsel responded, "I submit to the court.  The court is very familiar with the case.  I would submit to the court, ask them to use their discretion, and I would also indicate for the record I have filed the appropriate paperwork for notice of appeal for Mr. Delgado on that.  I would submit it."  The prosecutor then argued the court should decline to exercise its discretion to strike the firearm enhancement because "[t]his wasn't just an event that occurred, and it's out of character for the defendant.  But rather, it's a part of his kind of code of conduct, being a gang member in the . . . center of the Drew Street area controlled by the Avenues."

After hearing argument, the trial court announced it was not going to exercise its discretion to strike the firearm allegation because of Delgado's criminal record, which included multiple juvenile offenses (including assault with a deadly weapon) and convictions as an adult for misdemeanor grand theft (in 1990); felony burglary (in 1993); resisting arrest (in 1996); and assault with a deadly weapon (in 1999).  The court also found Delgado's conduct in the present case had been "extremely dangerous."  The court stated, "He shot at a moving car in residential neighborhood.  And although . . . we think no one was harmed, I really don't know whether someone was harmed or not. . . .  It was out of a gang situation.  And while I think this is a very significant sentence for not having killed anybody, or to whatever degree having not shot anybody, actually, I don't know, the record just tells me that he's had all these chances, and he just

15

keeps doing more and more things that he is not supposed to be doing."

The court asked defense counsel what Delgado's age was, to which defense counsel responded, "[H]e's 44, and I would submit to the court that the last entry you really read was in '99 which is 20 years[.]" The court responded, "I was [going to] mention that. . . . I know in my mind I was thinking when the case was being presented that he was what's called an OG, which is, you know, one of the original guys, and he is now much older and so forth." The court continued, "I do believe in mercy and things like that, but I'm not [going to] do it in this case. These are the kind of people that bring me my murder cases. . . . [N]o one got shot or killed in this case, but they could have easily gotten killed." The court then asked what weapon was used in the case, to which the prosecutor responded it was an assault weapon, and the court stated, "This is too much for the court." As discussed, the court sentenced Delgado to an additional 20-year term on count 2 pursuant to section 12022.53, subdivision (c).

2. *Applicable law and standard of review*

Senate Bill No. 620 (2017-2018 Reg. Sess.), effective January 1, 2018, amended section 12022.53, subdivision (h), to give trial courts discretion to strike firearm enhancements in the interest of justice. (§ 12022.53, subd. (h), as amended by Stats. 2017, ch. 682, § 2.) Section 12022.53, subdivision (h), provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

In exercising its discretion whether to strike a firearm enhancement, a trial court is required to consider the factors bearing on its section 1385 discretion, including "the rights of the

16

defendant, the interests of society represented by the People, and individualized considerations pertaining to the defendant and his or her offenses and background." (*People v. Rocha* (2019) 32 Cal.App.5th 352, 359 (*Rocha*) ["The amendments to section 12022.53(h) also rest upon section 1385, the same animating authority underlying *Romero*. Thus the court is required to weigh similar considerations when exercising its discretion[.]"], citing *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531 (*Romero*).) "'At the very least, the reason for dismissal must be "that which would motivate a reasonable judge."'" (*People v. Clancey* (2013) 56 Cal.4th 562, 580-581.)

We review the denial of a motion to dismiss pursuant to section 1385 for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*); accord, *People v. Tirado* (2019) 38 Cal.App.5th 637, 642.) A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it. (*Carmony*, at p. 377.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] Second, a "'decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so

17

irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

### 3. *The trial court did not abuse its discretion*

Delgado contends the trial court abused its discretion in refusing to strike the 20-year firearm enhancement in light of Delgado's lack of a recent criminal record and the circumstances of the shooting, including that Delgado only fired two shots at a fleeing car and there was no evidence anyone was hurt. The trial court did not abuse its discretion.

The trial court recognized its discretion, stating that "based on the new law that was passed, I would have discretion regarding the gun allegations." Further, in exercising its discretion, the court considered Delgado's criminal record, age, status in the Avenues gang, nature of the offense, including the weapon involved, and the danger to the public. (See *Rocha, supra*, 32 Cal.App.5th at p. 359.) The court found that although Delgado was 44 years old and had not been convicted of a crime in 20 years, he had a "medium" record with numerous convictions, including felony convictions for assault with a deadly weapon as both a juvenile and adult. At trial, the gang expert and other police witnesses provided extensive testimony regarding Delgado's continuing membership and involvement in the Avenues gang, which the court found was the type of activity that resulted in murders in the community. The court also found that although there was no evidence anyone was injured, the conduct was extremely dangerous in that Delgado shot at a moving car in a residential neighborhood. Further, because Delgado used an assault weapon, someone "could have easily gotten killed."

18

On appeal, Delgado argues the trial court placed undue weight on his criminal record despite the fact he had not been convicted of a crime in the prior 20 years. Delgado also asserts the court improperly speculated that someone may have been injured in the shooting even though there was no evidence of an injury and "[t]his evidence does not suggest that the gun was fired directly at the occupants of the car, but rather, the shots were fired at the vehicle only after it began to drive away." Thus, Delgado argues, "it can be inferred the shooting was done as a scare tactic in an effort to maintain the gang's territory, rather than in an effort to commit murder." Perhaps, but the court did not abuse its discretion in concluding to the contrary. Officer Hunt testified the Avenues gang would carry out shootings to injure or murder rivals who intruded into the heart of Avenues territory. The trial court could have reasonably concluded based on the surveillance video that Delgado's conduct in firing a shot at the vehicle as it was adjacent to him and then following the vehicle into the street to fire a second shot showed an intent to harm, not merely to scare the occupants. Moreover, the court did not speculate that someone had been shot, instead stating "no one got shot or killed in this case, but they could have easily gotten killed." In addition, the court highlighted Delgado's long-term involvement with the Avenues gang supported a finding that Delgado's shooting into the vehicle in the Avenues territory was particularly dangerous conduct.

In declining to exercise its discretion under section 12022.53, subdivision (h), the court recognized its discretion, considered the relevant factors, and made findings supported by the record. Delgado has not met his burden of demonstrating the court's decision was "so irrational or arbitrary

that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at p. 377.)

C.  *Delgado's Claim of Ineffective Assistance of Counsel at the Sentencing Hearing Fails Because He Has Not Shown Prejudice*

Delgado contends his defense attorney rendered ineffective assistance of counsel at the sentencing hearing because he failed to present any argument on Delgado's behalf despite the court's invitation.  Although we find the conduct of defense counsel in not presenting an argument on Delgado's behalf troubling, Delgado is not entitled to relief because he has not demonstrated prejudice from his lawyer's inaction.

"'"To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."'" (*People v. Rices* (2017) 4 Cal.5th 49, 80; accord, *People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*); see *Strickland v. Washington* (1984) 466 U.S. 668, 687-692 (*Strickland*).)  With respect to the prejudice prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694; accord, *Harrington v. Richter* (2011) 562 U.S. 86, 111-112 ["[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome. . . . The likelihood of a different result must be substantial, not just conceivable."].)  "If [the defendant] cannot show prejudice, we may reject his claim of ineffective assistance, and need not address the adequacy of trial counsel's performance." (*People v.*

20

*King* (2010) 183 Cal.App.4th 1281, 1298; *Strickland*, at p. 697 ["[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."].)

Defense counsel's submission to the court after the court pointedly invited him to present an argument that the 20-year enhancement should be stricken and the 10-year enhancement instead be imposed is concerning. Defense counsel's only engagement at the hearing was to provide Delgado's age at the trial court's request and to add that Delgado's prior convictions were 20 years old. Nonetheless, Delgado's ineffective assistance claim fails because he cannot show a substantial likelihood that had his counsel presented an argument at the sentencing hearing, there was a reasonable probability this would have changed the court's sentencing decision.

As discussed, the trial court requested Delgado's attorney present an argument as to why the court should strike the 20-year firearm enhancement, but the court made clear counsel had "a mountain to climb" given Delgado's criminal record. Delgado has not identified any evidence the trial court did not consider, and the arguments he now raises, including his age, the 20-year absence of convictions, and the lack of evidence of an injury, are all issues the court considered and discounted at the sentencing hearing. Because Delgado has failed to show a ""'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'"" his claim of ineffective assistance fails. (*Bell, supra*, 7 Cal.5th at p. 125.)

D.      *Remand Is Not Warranted for an Ability-to-pay Hearing on the Fines and Assessments Imposed by the Trial Court*

Delgado contends the trial court's imposition of fines and assessments without holding a hearing on his ability to pay violated his due process rights, relying on this court's opinion in *Dueñas, supra*, 30 Cal.App.5th 1157. Delgado acknowledges he did not object to the trial court's imposition of fines and assessments, but he argues forfeiture should not apply because his claim raises a question of law involving deprivation of his constitutional rights. However, as the People argue, Delgado was sentenced on June 13, 2019, more than five months after *Duenas* was filed on January 8, 2019. On these facts, application of the doctrine of forfeiture is appropriate.

In *Dueñas*, this court concluded "the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas, supra*, 30 Cal.App.5th at p. 1168; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-655 (*Belloso*), review granted Mar. 11, 2020, S259755.)[11] In contrast to court assessments, a restitution fine under section

---

[11]      The Supreme Court granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47 to decide the following issues: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?" (Supreme Ct. Minutes, Nov. 13, 2019, p. 1622.)

1202.4, subdivision (b), "is intended to be, and is recognized as, additional punishment for a crime." (*Dueñas*, at p. 1169; accord, *Belloso*, at p. 655.)  Section 1202.4, subdivision (c), expressly provides a defendant's inability to pay a restitution fine may not be considered as a "compelling and extraordinary reason" not to impose the statutory minimum fine.  However, as this court held in *Dueñas*, to avoid the serious constitutional questions raised by imposition of such a fine on an indigent defendant, "although the trial court is required by . . . section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas*, at p. 1172; accord, *Belloso*, at p. 655.)

In *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 (*Castellano*), we held a defendant's failure to object to the imposition of fines and fees before *Dueñas* was decided does not constitute forfeiture.  As we explained, "[N]o California court prior to *Dueñas* had held it was unconstitutional to impose fines, fees or assessments without a determination of the defendant's ability to pay. . . .  When, as here, the defendant's challenge on direct appeal is based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial, reviewing courts have declined to find forfeiture." (*Castellano*, at p. 489; accord, *Belloso, supra*, 42 Cal.App.5th at p. 662; *People v. Santos* (2019) 38 Cal.App.5th 923, 931-932; contra, *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 [defendant forfeited challenge by not objecting to the assessments and restitution fine at sentencing]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154 [same].)

However, Delgado forfeited his challenge because Delgado was sentenced more than five months after *Dueñas* was decided.

Unlike in *Castellano*, Delgado's challenge on appeal is not "based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial." (*Castellano, supra*, 33 Cal.App.5th at p. 489.) Additionally, there are no special circumstances or legal issues that would warrant us to exercise our discretion to excuse forfeiture. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["application of the forfeiture rule is not automatic," although "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"]; *Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 215 ["'[N]either forfeiture nor application of the forfeiture rule is automatic.'"].)[12]

---

[12] Delgado contends that if we find forfeiture, his attorney's failure to object to imposition of the fines and fees was ineffective assistance of counsel. However, Delgado's claim of ineffective assistance of counsel fails because the record does not reflect why his attorney did not object to imposition of the fines and fees. His attorney may have decided not to object because an objection would have been futile in light of Delgado's long sentence and the limited amount of the total fines and assessments. (See *People v. Caro* (2019) 7 Cal.5th 463, 488 ["On direct appeal, if the record '"sheds no light on why counsel acted or failed to act in the manner challenged,"' we must reject the claim '"unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation."'"]; *People v. Mickel* (2016) 2 Cal.5th 181,198 ["[A] reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""no rational tactical purpose"" for an action or omission."].)

## DISPOSITION

The judgment is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.