Filed 3/13/24  In re C.S. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. C.S., Defendant and Appellant. | F085426 (Super. Ct. No. JJD059342) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Hugo J. Loza, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Sean McCoy  and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

This is appellant C.S.'s fourth appeal following his 2006 conviction for a murder he committed at the age of 16.[1] Following remand in *See III* for a transfer hearing, appellant claims the juvenile court abused its discretion when it granted the prosecution's motion to transfer him to a court of criminal jurisdiction. (Welf. & Inst. Code, § 707, subd. (a)(3).)[2] Following receipt of supplemental briefing on the issues of retroactivity and remedy, we conclude that appellant is entitled to remand for a new transfer hearing in view of the amendments to section 707 under Assembly Bill No. 2361 and Senate Bill No. 545, and the amendment to section 607 under Senate Bill No. 135.[3] Therefore, we vacate the juvenile court's order granting the prosecution's motion to transfer this matter to adult criminal court and remand for a new transfer hearing.

## PROCEDURAL BACKGROUND

### I. *See I*

In 2006, when appellant was 16 years old, he and four other males approached the 16-year-old victim, Robert Trevino, in the street. Appellant and his group were members of the Oriental Troops gang. Trevino was a rival Norteño gang member. One of the individuals with appellant shook hands with Trevino and pointed. As Trevino turned to look, appellant shot him in the head from three to four feet away.

In 2008, appellant and two others were tried for Trevino's murder.[4] Appellant was convicted of murder (Pen. Code, § 187, subd. (a)) and conspiracy to commit murder (Pen.

---

[1] Appellant's request for judicial notice of our prior nonpublished opinions in *People v. See* (Dec. 18, 2009, F055800) (*See I*), *People v. See* (Apr. 3, 2018, F075084) (*See II*), and *People v. See* (Sept. 23, 2021, F079261) (*See III*) is granted. (Evid. Code, §§ 452, subd. (d), 459.)

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] Assembly Bill No. 2361 (2021–2022 Reg. Sess.) (Assembly Bill 2361), effective January 1, 2023; Senate Bill No. 545 (2023–2024 Reg. Sess.) (Senate Bill 545), effective January 1, 2024; Senate Bill No. 135 (2023–2024 Reg. Sess.) (Senate Bill 135), effective September 13, 2023.

[4] A fourth individual pleaded to voluntary manslaughter and testified for the prosecution.

Code, §§ 182/187, subd. (a)), and the jury found the special circumstance allegation and the gang and firearm enhancements true (Pen. Code, §§ 190.2, subd. (a)(22), 186.22, subd. (b)(1), 12022.53, subds. (d) & (e)(1)). The trial court sentenced appellant to life without the possibility of parole (LWOP) for murder with an additional term of 25 years to life for the firearm enhancement.

Appellant appealed and in 2009 in *See I*, a panel of this court ordered correction to the abstract of judgment, but affirmed the judgment. The California Supreme Court denied appellant's petition for review.

## II.     *See II*

In 2016, after the United States Supreme Court issued decisions in *Miller* and *Montgomery*, appellant filed a habeas petition in the trial court seeking relief from his LWOP sentence. (*Miller v. Alabama* (2012) 567 U.S. 460, 465 (*Miller*) [holding "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments'"]; *Montgomery v. Louisiana* (2016) 577 U.S. 190, 212 (*Montgomery*) [*Miller* announced a substantive rule of constitutional law that applies retroactively].) The trial court granted the petition in May 2016 and in November 2016, voters enacted Proposition 57 (as approved by voters, Gen. Elec. (Nov. 8, 2016)) (Proposition 57). In December 2016, the trial court resentenced appellant to 25 years to life for murder with an additional term of 25 years to life for the firearm enhancement.

Appellant appealed, claiming his sentence was the functional equivalent of LWOP and violated the Eighth Amendment. In supplemental briefing, appellant requested remand to allow the trial court to consider whether to strike the firearm enhancement pursuant to Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620), effective January 1, 2018. In 2018, in *See II*, this court rejected appellant's constitutional challenge to his sentence of 50 years to life, but remanded the matter to allow the trial court to exercise its discretion under Senate Bill 620.

**III.** *See III*

On remand, the trial court declined to strike the firearm enhancement and appellant appealed. He claimed the trial court erred by not referring him to juvenile court for a transfer hearing under Proposition 57. In addition, he claimed that in failing to take the *Miller* factors and his postconviction conduct into account, the trial court abused its discretion when it declined to strike the firearm enhancement. Finally, he sought remand for a *Franklin* hearing. (*People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).)

In 2021, in *See III*, this court concluded that because appellant's sentence was vacated and he was resentenced, judgment was not final within the meaning of *Estrada* and he was entitled to remand for a transfer hearing under Proposition 57. (*In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).) We also concluded that the trial court failed to exercise informed discretion when it denied his request for relief under Senate Bill 620, necessitating remand. Finally, although appellant had an opportunity to make a record under *Franklin* and, therefore, would not be entitled to remand on that ground, our resolution of his other claims rendered this request for relief moot.

**IV.** **Present Appeal**

In his fourth appeal, appellant challenges the juvenile court's decision granting the prosecution's motion to transfer him to a court of criminal jurisdiction. He argues the court's findings are not supported by substantial evidence, and the court treated amenability to rehabilitation as merely a factor, did not make an adequate record of its reasoning, relied on the fact he would be released if the transfer motion was denied, and refused to consider his rehabilitative efforts in prison. The People argue the court considered all five factors under section 707, subdivision (a)(3)(A)–(E), and that the court's findings on the factors support its determination that appellant could not be rehabilitated prior to expiration of juvenile court jurisdiction.

Following our review of the briefs, we granted the parties an opportunity to brief the issues of retroactivity (§ 607, subd. (m); *Estrada, supra*, 63 Cal.2d at pp. 744–745),

4.

and remedy (*People v. Salazar* (2023) 15 Cal.5th 416, 425 (*Salazar*); *In re F.M.* (2023) 14 Cal.5th 701, 715–716; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*)) in light of Assembly Bill 2361, Senate Bill 545, and Senate Bill 135. (Gov. Code, § 68081.) The parties agree the bills apply retroactively and the Attorney General does not oppose remand for a new transfer hearing.

## DISCUSSION

### I.        Proceedings in Juvenile Court

Remittitur issued in *See III* in November 2021. In March 2022, an updated probation report was filed, followed by a wardship petition and motion to transfer C.S. from juvenile court to adult criminal court. (§§ 602, subd. (a), 707, subd. (a)(1).) In December 2022, the juvenile court held a transfer hearing.

Assembly Bill 2361, the retroactivity of which is addressed in part II. of the Discussion, was effective January 1, 2023, and the prosecutor requested that the juvenile court apply the soon-to-be-effective standard of clear and convincing evidence. The court agreed, but neither the prosecutor nor the court expressly addressed the other changes under the bill.

The prosecution's sole witness was the probation officer who prepared the report. On the behalf of C.S., psychologist Mary K. McDonald, who prepared a report concluding C.S.'s "prognosis in terms of rehabilitation is excellent," testified, as did C.S.

The juvenile court acknowledged that the probation report was "not as good as it should be" and that the probation officer did not "do a great job in analyzing the circumstances .…" The court considered C.S.'s background and "[t]he degree of criminal sophistication exhibited by the minor"; "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction"; "minor's previous delinquent history"; "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor"; and "[t]he circumstances and gravity of the offense," as required under section 707, subdivision (a)(3)(A) through (E). With respect to rehabilitation, the court concluded, "I

5.

really don't think we can make a finding under the [707, subdivision ](a)(3)(B)(i)] section that the Court has time to rehabilitate the minor.  There is no additional time for the Court to exercise jurisdiction over the minor given his age."  The court granted the prosecution's motion, and ordered C.S. transferred to adult criminal court.  This appeal followed.

## II.    Retroactivity of Posthearing Legislative Changes

### A.    Assembly Bill 2361 and Senate Bill 545

Effective January 1, 2023, Assembly Bill 2361 amended section 707 in three material ways.  First, it increased the burden of proof borne by the prosecution from preponderance of the evidence to clear and convincing evidence (§ 707, subd. (a)(3)), an "intermediate standard [that] 'requires a finding of high probability'" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998).  "'The precise meaning of "clear and convincing proof" does not lend itself readily to definition.  It is, in reality, a question of how strongly the minds of the trier or triers of fact must be convinced that the facts are as contended by the proponent.…  Where clear and convincing proof is required, the proponent must convince the jury or judge, as the case may be, that it is *highly probable* that the facts which he asserts are true.  He must do more than show that the facts are probably true.'" (*Id.* at pp. 998–999.)

**"**Second, under the previous version whether the minor is amenable to rehabilitation while under the jurisdiction of the juvenile court was one of five factors for the court to consider in determining whether the case should be transferred to criminal court." (*In re E.P.* (2023) 89 Cal.App.5th 409, 416 (*E.P.*); accord, *In re S.S.* (2023) 89 Cal.App.5th 1277, 1288 (*S.S.*).)  The statute now provides, "In order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).)  Thus, amenability to

rehabilitation is now the ultimate question rather than merely one of five factors to consider. (*E.P., supra*, at p. 416; accord, *S.S., supra*, at pp. 1286–1287.)

Third, "the previous version required that if the juvenile court orders a transfer, it shall recite the basis for its decision in the order." (*E.P., supra*, 89 Cal.App.5th at p. 416.) As amended, the statute requires more of the court, providing, "If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, *which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court*." (§ 707, subd. (a)(3), italics added.)

Effective January 1, 2024, Senate Bill 545 further amended section 707, subdivision (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), and (E)(ii), to require rather than permit the juvenile court to give weight to any relevant factors set forth therein. In addition, the bill added "the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery" as factors to consider in evaluating the minor's degree of criminal sophistication (§ 707, subd. (a)(3)(A)(ii)), and in considering the gravity of the offense committed, added, "When evaluating the criterion specified in clause (i), the court shall consider evidence offered that indicates that the person against whom the minor is accused of committing an offense trafficked, sexually abused, or sexually battered the minor" (§ 707, subd. (a)(3)((E)(iii)).

"'It is well settled that a new statute is presumed to operate prospectively'" (*People v. Stamps* (2020) 9 Cal.5th 685, 698), but under *Estrada*, "[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date." (*People v. Gentile* (2020) 10 Cal.5th 830, 852, citing *Estrada, supra*, 63 Cal.2d at pp. 744–745.) "'The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal

law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'" (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.) In *Lara*, the court concluded that *Estrada* applied in the context of Proposition 57 because while it did not ameliorate the punishment or possible punishment for a particular crime, it ameliorated the possible punishment for juveniles as a class. (*Lara, supra*, at p. 308.) The amendments to section 707 under Assembly Bill 2361, as well as under Senate Bill 545, "make it more difficult to transfer juveniles from juvenile court, which similarly reduces the possible punishment for juveniles." (*S.S., supra*, 89 Cal.App.5th at p. 1289.) Therefore, we agree with the parties that the changes effected by Assembly Bill 2361 and Senate Bill 545 apply retroactively. (*S.S., supra*, at pp. 1288–1289; *E.P., supra*, 89 Cal.App.5th at p. 416.)

### B. Senate Bill 135

Senate Bill 135 amended section 607 to provide, "The court may retain jurisdiction over a person who is 25 years of age or older for a period not to exceed two years from the date of disposition if the person is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707. The court shall exercise jurisdiction in conformance with the objectives of the juvenile court." (§ 607, subd. (d).) The bill also amended the statute to provide, "The amendments to this section made by the act that added this subdivision apply retroactively." (*Id.*, subd. (m).) Accordingly, we agree with the parties that Senate Bill 135 applies retroactively.

## III. Remedy

Under the California Constitution, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has

resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error .…'" (*In re K.H.* (2022) 84 Cal.App.5th 566, 607, quoting *In re Celine R.* (2003) 31 Cal.4th 45, 60 [citing *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) However, "not every error is of the type that lends itself to resolution under [*Watson*'s] likelihood-of-success test [citation]." (*In re K.H.*, *supra*, at p. 608, citing *In re A.R.* (2021) 11 Cal.5th 234, 252–253.)

As the California Supreme Court recently explained in the context of a retroactive change in the law affecting determinate sentencing,[5] "'there is a practical difference in assessing the effect of an error when the court has not articulated whether a discretionary decision was made in the first place, as compared to when there were errors in a decision the court actually rendered.' (*In re F.M.* (2023) 14 Cal.5th 701, 716.) Where … the sentencing court was not aware of the scope of its discretionary powers at sentencing, *Watson* does not properly take into consideration the 'more speculative inquiry' of what choice the court is likely to make in the first instance. (*Ibid.*; accord, *People v. McDaniels* (2018) 22 Cal.App.5th 420, 426.) Indeed, when the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing. Accordingly, when … a sentencing court was not fully aware of the scope of its discretionary powers, 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had

---

[5]     Senate Bill No. 567 (2021–2022 Reg. Sess.) (amending Pen. Code, §§ 1170 and 1170.1, eff. Jan. 1, 2022).

been aware that it had such discretion."'" (*Salazar, supra*, 15 Cal.5th at p. 425, quoting *Gutierrez, supra*, 58 Cal.4th at p. 1391.)

"[W]hen a court has not exercised its informed discretion, remand is the default 'unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion."'" (*Salazar, supra*, 15 Cal.5th at p. 431, quoting *Gutierrez, supra*, 58 Cal.4th at p. 1391.)[6] As previously stated, the prosecutor in this case requested the juvenile court apply the clear and convincing evidence standard in light of Assembly Bill 2361 and the court agreed, but nothing in the record persuades us that the prosecutor or the juvenile court appreciated the full scope of the changes effected by Assembly Bill 2361.[7] Moreover, section 707 was again amended under Senate Bill 545 and the court's concern with lack of jurisdiction over C.S. should it deny the transfer motion, which was a significant issue, was subsequently directly addressed by Senate Bill 135's amendment of section 607.

---

[6] In *S.S.*, the Court of Appeal found, viewed through the lens of retroactive application of Assembly Bill 2361, that the juvenile court erred in ordering the minor's transfer. (*S.S., supra*, 89 Cal.App.5th at p. 1289.) The court then assessed the error under *Watson* and concluded a miscarriage of justice had occurred. (*S.S., supra*, at p. 1289.) The decision in *S.S.*, however, predated *Salazar*, which addressed the appropriate standard for assessing reversal for miscarriage of justice where, as here, the appellant is entitled to the retroactive application of ameliorative legislation affecting the scope of the court's discretion. Although the decision is not yet final, we note that another Court of Appeal recently relied on *S.S.* and applied *Watson* to assess prejudice. (*In re Miguel R.* (2024) __ Cal.App.5th __, __ [2024 Cal.App. Lexis 141, *32].) In view of *Salazar*, which is binding, we believe reliance on *Watson*'s harmless error analysis in this context is misplaced. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; accord, *K.R. v. Superior Court* (2017) 3 Cal.5th 295, 308.)

[7] To be clear, we do not fault the juvenile court or the prosecutor in this regard. The volume of legislative change over the past several years has been nothing short of dizzying and many of those changes have been substantial, leaving courts and practitioners to grapple with and disagree over how to interpret and to implement the changes. (See *E.P., supra*, 89 Cal.App.5th at p. 411 ["The Greek philosopher Heraclitus observed that 'nothing endures but change.' The California legislature must have had Heraclitus in mind when it changed a variety of laws in the penal and juvenile codes."].) We recognize the difficulties and uncertainties faced by juvenile courts and trial courts in attempting to implement the many changes in the law, but to date, the law in this area remains mostly undeveloped, and this case presents only the issues of retroactivity and remedy.

In sum, this case does not present an exception to the general rule that remand is required where, due to subsequent changes in the law, the lower court did not exercise informed discretion.  (*Salazar, supra*, 15 Cal.5th at p. 431.)  Given the retroactive changes to sections 707 and 607, C.S. is entitled to remand for a new transfer hearing that comports with the law as it now stands.

## DISPOSITION

The juvenile court's order of December 8, 2022, granting the prosecution's motion to transfer C.S. from juvenile court to adult criminal court is vacated, and this matter is remanded for a new transfer hearing in light of the amendments to section 707 as amended by Assembly Bill 2361 and Senate Bill 545 and the amendment to section 607 under Senate Bill 135.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.

11.